UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Sarah Kempen,<br><br>    Plaintiff,<br><br>v.<br><br>Monterey Financial Services, LLC,<br><br>    Defendant. | Case No.<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

## PARTIES

1. Plaintiff, Sarah Kempen ("Sarah"), is a natural person who resided in Madison, Wisconsin, at all times relevant to this action.

2. Defendant, Monterey Financial Services, LLC ("MFS"), is a California limited liability company that maintained its principal place of business in Oceanside, California, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

5. At all times relevant to this action, MFS collected consumer debts.

1

6. MFS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

7. The principal source of MFS's revenue is debt collection.

8. MFS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. As described, *infra*, MFS contacted Sarah to collect a debt that was incurred primarily for personal, family, or household purposes.

10. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

11. Sarah is a "consumer" as defined by 15 U.S.C. § 1692a(3).

12. Prior to MFS engaging Sarah with their debt collection strategies, Sarah fell victim to a deceptive and high-pressure timeshare sales presentation.

13. As a result, Sarah was induced to enter an agreement to purchase a timeshare contract ("Timeshare Contract"), with Allegro Vacation Club ("Timeshare Creditor").

14. Shortly thereafter, Sarah discovered the Timeshare Contract's actual terms significantly differed from what the Timeshare Creditor presented at the timeshare sales presentation.

15. As a result, Sarah refused to pay the balance allegedly owed ("Timeshare Debt") to Timeshare Creditor.

16. In the months that followed, Sarah began searching for a new home and when she found her dream home, Sarah attempted to obtain financing.

17. Unbeknownst to Sarah, Timeshare Creditor sent the Timeshare Debt to MFS to coerce payment from Sarah.

18. As a result of its collector efforts, MFS reported the Timeshare Debt on Sarah's credit report without providing advanced notice to Sarah.

19. Because of MFS's derogatory reporting of the Timeshare Debt, Sarah's attempt to obtain a mortgage financing failed.

20. Although extremely frustrated, Sarah blamed herself for falling prey to a timeshare scam and decided to simply pay the alleged Timeshare Debt.

21. As such, to restore her credit to enable her to purchase a home, Sarah paid MFS to settle the Timeshare Debt.

22. In late 2021, Sarah resumed shopping for a home.

23. To avoid the embarrassment she experienced previously, this time before making an offer, Sarah pulled her credit report.

24. Astonishingly, Sarah discovered that MFS was falsely reporting a different account Sarah allegedly owed to Timeshare Creditor on her credit report.

25. Prior to MFS reporting this new account on Sarah's credit report, MFS failed to notify her of the possible reporting under Regulation F. 12 CFR part 1006.

26. Upon learning of the false information on her credit report, Sarah immediately disputed the debt.

27. It is the policy, procedure, and practice of MFS to not thoroughly research debt disputes made by consumers like Sarah in detail.

28. As a result of that policy, procedure and practice, MFS often improperly validates debts that are invalid or otherwise not owed by consumers.

29. As a result of that policy, procedure, and practice and despite MFS having actual knowledge that it was reporting an inaccurate account on Sarah's credit report, here, MFS failed to conduct a reasonable investigation into Sarah's dispute.

30. In fact, in response to Sarah's dispute, on November 12, 2021, MFS sent a letter to Sarah that claiming the debt was valid, still due and demanded payment from Sarah.

31. The letter also falsely stated that under the FDCPA, the time for Sarah to dispute the debt had passed.

32. Under the FDCPA, a debt dispute and a debt validation request are distinct.

33. Under the FDCPA, a debt collector must process a consumer's debt dispute any time a consumer informs the debt collector that a debt is disputed. See 15 U.S.C. 1692(e)8.

34. On information and belief, MFS's November 12, 2021, letter is a "form letter" that it sent to numerous consumers across the United States.

35. Upon receiving the letter, MFS led Sarah, and other consumers like Sarah, to believe that the statements made in the letter were true and accurate.

36. For example, the letter stated, "per the FDCPA, [she] had 30 days from the date [she was] notified by Monterey that [her] account had been placed with Monterey Collections, to request to dispute this debt".

37. MFS's above referenced statement is false.

38. MFS's November 12, 2021, letter violated the FDCPA.

39. MFS's letter template used to create the November 12, 2021, letter violates the FDCPA.

40. It is the policy and procedure and practice of MFS to send this letter to consumers that dispute debts outside of the FDCPA validation period established in 15 U.S.C. 1692g.

41. Desperate to purchase a home, over the next several months, Sarah worked tirelessly to get MFS to delete the inaccurate tradeline from her credit report.

42. In doing so, Sarah lost sleep, lost productivity at work, was forced to retain legal counsel and expend considerable time and energy.

43. Finally on February 11, 2022, after excruciating effort, during a telephone conversation, Sarah finally convinced MFS that they had made a mistake.

44. On that telephone call, MFS admitted to the mistake and that MFS was reporting inaccurate information on Sarah's credit report.

45. During this telephone conversation, an employee of MFS assured Sarah that the false tradeline would be deleted from Sarah's credit report.

46. Not surprisingly, Sarah expressed concerned that MFS would make another mistake and harm her credit in the future.

47. As such, to ease Sarah's concerns, MFS agreed to send Sarah a letter admitting its recent credit reporting was an error, stating that the debt was nonexistent and put in writing that MRS was not attempting to collect a debt from Sarah.

48. Upon receiving this letter, Sarah was shocked because the letter purported to be a renewed effort by MFS to collect a debt from Sarah.

49. In fact, MFS's letter notified Sarah that a debt was still owed, that MFS was attempting to collect it, and that any information MFS obtained from Sarah would be used to collect the debt.

50. It is the policy, procedure, and practice for MFS to notify consumers that MFS is attempting to collect a debt, even if a debt is not owed and even if a debt does not exist.

51. MFS followed that policy, procedure, and practice, here.

52. MFS caused Sarah to lose hours of lost productivity, spend hours of unnecessary work, experience unconscionable stress and suffer irreparable harm.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

53. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 52 above as if fully set forth herein.

54. Defendant violated 15 U.S.C. § 1692c(b) by communicating with a consumer reporting agency otherwise than permitted by law in connection with the collection of the debt without Plaintiff's consent.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

55. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 52 above as if fully set forth herein.

56. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

57. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

58. The likely effect of Defendant's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Plaintiff.

59. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

60. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 52 above as if fully set forth herein.

61. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA.  *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee.  If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

62. Defendant's policies and procedures, as described in Paragraphs 27 through 52 *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

63. Defendant's practice, therefore, violates Section 1692d of the FDCPA, which provides:

    A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

    *See* 15 U.S.C. §1692d.

64. Because Defendant's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

65. Defendant's policies and procedures violated 15 U.S.C. § 1692d.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

66. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 52 above as if fully set forth herein.

67. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FIVE

### Violation of the Fair Debt Collection Practices Act

68. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 52 above as if fully set forth herein.

69. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT SIX

### Violation of the Fair Debt Collection Practices Act

70. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 52 above as if fully set forth herein.

71. Defendant violated 15 U.S.C. §1692g by failing to send Plaintiff the required notice within five days of Defendant's initial communication with Plaintiff.

## JURY DEMAND

72. Plaintiff demands a trial by jury.

## **PRAYER FOR RELIEF**

73. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: February 22, 2022

By: /s/ Jeffrey S. Hyslip
Jeffrey S. Hyslip, Esq.
Hyslip Legal, LLC
1309 Park St., Suite A
McHenry, IL 60050
Phone: 614-490-4224
Email: jeffrey@hysliplegal.com

*Attorney for Plaintiff*